## STATE v. BRANDELL.

Code Cr. Proc. § 643, provides that the procedure in the circuit court in criminal matters, not specifically provided, shall be in accordance with the procedure at common law. **Held** that, practice as to continuances not being specifically provided for in the Code, the rules of the common law in respect thereto prevail.

The granting or refusing of a motion for continuance is or-

dinarily within the discretion of the trial court, and its rulings thereon should not be reversed except for manifest abuse.

Evidence in a prosecution for stealing a horse **held** sufficient to establish the corpus delicti and the ownership of the property.

Evidence in a prosecution for larceny corroborating an accomplice **held** sufficient to sustain a conviction.

As the trial court and jury have the opportunity of observing the appearance of witnesses and the manner in which they testify, the verdict and order overruling a motion for new trial will be given great weight on appeal.

. Where there was very little, if any, circumstantial evidence introduced by the state, an instruction requested by accused that, in order to establish a charge by circumstantial evidence, it is necessary that the proof should be not only consistent with defendant's guilt, but inconsistent with his innocence, and if a single material circumstance remains unproved, or, if proven, is inconsistent with the theory of guilt, the crime is not proven with that certainty which the law requires and defendant should be acquitted, and circumstantial evidence to justify a variance of guilt must exclude to the moral certainty every other reasonable hypothesis was properly denied.

In a prosecution for stealing a horse, in which B. testified that he took the horse at the direction of accused, the court instructed, after defining an accomplice and an accessory, that the testimony of B., standing undisputed, would show that he was at least an accessory, but that, as there was a dispute, the court would leave it to the jury, and that, if the jury believed that he was an accomplice, then his evidence must be corroborated, and that, if the jury is satisfied from the evidence that he was corroborated, then the question need not be settled as to whether or not he was an accomplice. Held that, witness B. being either an accomplice or an accessory, the court should have particularly called the jurors' attention to his position in the case in order that they might properly discriminate and weigh his evidence.

Where the court in a prosecution for laceny states to the jury that the guilt of dedendant must be established to their satisfaction beyond a reasonable doubt, and repeats such instruction twice, it was not necessary in discussing the question whether a witness was an accomplice or an accessory to again specifically charge the jury that they must be satisfied with the guilt of accused beyond a reasonable doubt.

(Opinion filed December 28, 1910.)

Appeal from Circuit Court, Hyde County. Hon. LYMAN T. BOUCHER, Judge.

Frank Brandell was convicted of grand larceny and appeals. Affirmed.

*A. K. Gardner, John Pusey,* and *C. E. Noel,* for appellant. *S. W. Clark, Atty. Gen., Cloyd D. Sterling, Asst. Atty. Gen.,* and *Royal C. Johnson, State's Atty.,* for the State.

CORSON, J. Upon an information duly filed by the state's attorney of Hyde county, the defendant was informed against, in connection with Fred Cline and George McCarthy, for the crime of grand larceny, alleged to have been committed on or about the 5th day of December, 1908, in the said county of Hyde, and it is alleged therein that the three parties named on the date aforesaid "did willfully, unlawfully, and feloniously, by fraud and stealth, take, steal and carry away, certain personal property, to-wit, one brown mare with mealy nose, three years old, weight about 1,200 pounds, then and there in the possession of and of the goods, property and chattels of W. L. Thompson and of the value of one hundred and seventy-five dollars, without the consent of the owner thereof and with intent to deprive the owner, the said W. L. Thompson, thereof." A separate trial was granted to the defendant, and he, having been found guilty, has appealed to this court from the judgment and order denying a new trial.

It is contended by the appellant that the court erred in denying defendant's motion for a continuance. It will be noticed that the defendant was informed against and charged jointly with Fred Cline and George McCarthy. A preliminary hearing was had, and all three were held by the examining magistrate, and required to give bonds to appear at the circuit court. It was conceded by the state's attorney that George McCarthy was dangerously ill, and his case was continued. Before the commencement of the trial, the appellant moved for a continuance and for a separate trial. The application for continuance on the part of the defendant, Brandell, and Cline, was denied. Upon a careful examination of the affidavits made on the part of Brandell and Cline, we are of the opinion that the court committed no error in denying the motion. The practice of the circuit courts of this state in criminal cases relating to the postponement or continuance of a trial not being specifically provided for in the Codes of

Criminal Procedure, such application must be made in accordance with the practice of the common law, except in so far as that practice may be in conflict with the state Constitution. Section 643 of the Criminal Code, relating to this subject, is as follows: "The procedure, practice and pleadings in the circuit courts of this state, in criminal actions or in matters of a criminal nature, not specifically provided for in this Code, shall be in accordance with the procedure, practice and pleadings of the common law." The granting or refusing of such motion is ordinarily within the sound judicial discretion of the trial court, and its ruling thereon will not be reversed by this court, unless there has been a manifest abuse of such discretion. State v. Wilcox, 21 S. D. 532, 114 N. W. 687; 9 Cyc p. 166; 4 Ency. Pl. & Pr. p. 827; Gains v. White, 1 S. D. 434, 47 N. W. 524; Pierre v. Berg, 7 S. D. 578; 64 N. W. 1130; Hood v. Fay, 15 S. D. 84, 87 N. W. 528; Saastad v. Okeson, 16 S. D. 377, 92 N. W. 1072; State v. Phillips, 18 S. D. 1, 98 N. W. 171.

In 9 Cyc., supra, the common law applicable to a continuance in a criminal case is thus stated: "A party charged with a crime has no natural or inalienable right to a continuance, and, in the absence of a statute, is not entitled to the same as a mere matter of right or law. At common law such applications were addressed to the sound discretion of the court, and its decision thereon could not be assigned as error; and, while now the practice acts in perhaps all American jurisdictions authorize the review of such decision by the appellate tribunals, the rule is well established that the trial court still acts within its own discretion in granting or refusing an application for a continuance in a criminal case, whether it be on behalf of the accused or of the state, which ruling will not be disturbed in the absence of a clear abuse of discretion." As, in our view of the case, the affidavits were clearly insufficient to entitle the defendant to a continuance as a matter of right, we do not deem it necessary to insert the affidavits in this opinion.

It is disclosed by the evidence on the trial of the information that W. L. Thompson was the owner of a band of horses which

ran on the prairie near his home, about four miles from Highmore; that the band of horses included the mare described in the information; that at about the time alleged the animal was missed from the ranch by said Thompson, and that he was unable to find the same after a diligent search; that the animal was taken from the band by one Charles Bowman, a young man about 18 years of age, who lived at the time at and in the vicinity of Highmore; that two or three days subsequent to the taking the animal came into the possession of the defendant, Frank Brandell, who, a few days thereafter, shipped the same by freight on the railroad to one George McCarthy at St. Lawrence, in an adjoining county; that on or about the 20th of March, 1909, the defendant, Frank Brandell, was arrested on the charge of having committed the crime, and on the trial Bowman testified, in effect, that he was employed by defendant, Brandell, to go out to the ranch and bring the animal in for him; that prior to the arrest of Brandell he learned that he was suspected of being guilty of the larceny, and that he thereupon had an interview with Bowman, in which he informed Bowman of the contemplated proceedings against him, and that thereupon it was arranged between him and Bowman, in order to remove suspicion from himself, that Bowman should state that he took the animal by mistake from the ranch of Thompson, believing it to be an animal that he had purchased or taken in payment of one McIver for work that he had done for him and sold the same to him, Brandell; that the defendant and Bowman went out several miles and visited McIver, and he was induced to corroborate Bowman's statement that he had sold an animal of a similar description to the said Bowman; that at the suggestion of one C. H. Drew, who was cashier of a bank in Highmore and who had been a partner of Brandell's, after being informed by Bowman of the transaction as agreed upon between him and the defendant, Brandell, and McIver, they visited the office of the state's attorney and the account of the transaction as agreed upon was given by the defendant, Brandell, Bowman, and McIver to the state's attorney; that the state's attorney, not being satisfied with the statement of the witnesses,

subsequently filed the information upon which the defendant was tried. Bowman, as a witness on the part of the state, admitted that the statement made by him to the state's attorney in his office was not true, and stated that he in fact was employed by the defendant to go out to the ranch and get the animal and bring her in for him, for which he was to receive $10; that Bowman did take the animal from the ranch, brought it to town, and that, the defendant not being ready to receive it, he turned it out for a day or two on the ranch with some horses belonging to one Dobson; that subsequently, two or three days after, at the suggestion of the defendant, Brandell, he again brought the animal into town, and placed it in the barn of one Gardner, from which it was taken by some person, and the evidence tended to prove that that person was Frank Brandell himself, and shipped a day or two afterwards by him to McCarthy. McIver who was a witness also on the part of the state admitted that the statement made by him to the state's attorney as corroborating the statement of Bowman was untrue, and that the statement made by him as the statement agreed upon between him and Bowman at the time the defendant, Brandell, came out with Bowman to see him, and the story of his selling an animal of a similar description to Bowman was a fabrication, and made for the purpose of aiding Brandell in exoneration of himself from the charge of having been connected with the larceny of the property.

It is contended by the appellant, first, that the evidence does not establish the corpus delicti, and there is a total lack of proof that the animal taken was the animal described in the information, and no proof that said animal belonged to W. L. Thompson. It will be observed that the description of the animal alleged to have been stolen was "one brown mare with mealy nose, 3 years old, weight about 1,200 pounds, then and there in the possession of and of the goods, property, and chattles of W. L. Thompson." W. L. Thompson, as a witness for the state, testified that he was a stock raiser; that he has kept on hand from 2 to 100 head of horses in Lincoln township, Hyde county, four miles from Highmore; that on the 4th of December he missed the animal; that

she was a brown mare with "light nose," coming 3 years old, weight about 1,200 pounds, which he valued at $175; that he did not give any one authority to take that mare, did not give consent to take the mare or do anything with her; that at the time she was taken she was running at his place or within a short distance of it at the time; that he saw her last about the 1st of December, the 2nd or 3rd, somewhere along there; that he tried to find her; that he has not seen her since. It is quite clear that the term "mealy" as used in the information was evidently used in the sense of light color. The description therefor as given of the animal by its owner, Thompson, was substantially the same as the description alleged in the information; and the jury, by their verdict, evidently found that the description of the animal in the information and the description given by the complaining witness, Thompson, was practically the same. The witness in describing the animal sometimes referred to her as a brown mare, sometimes as a dark brown, and in some instances as a black mare. It is quite evident from the testimony that the animal taken from the ranch of Thompson was a very dark brown, and had a light or mealy nose. The evidence that Thompson had not seen the animal subsequently to its being taken from his range is not in our opinion very material, as the identity of the animal stolen seems to have been clearly established as the property of said Thompson. Bowman in his evidence practically admits that he knew the animal he took from the range was Thompson's property, and the witnesses throughout generally speak of the animal as the Thompson mare. The evidence, in our opinion, was amply sufficient to warrant the jury in finding that the animal stolen was the property of Thompson as alleged in the information.

It is further contended by the appellant that Bowman was an accomplice, and that there was not sufficient evidence introduced corroborating him to justify the jury in finding the defendant guilty, but in our opinion this contention is untenable. Assuming that Bowman was in effect an accomplice, his evidence was strongly corroborated by other testimony in the case. The fact that the animal was brought into town by Bowman and left at

Gardner's barn is fully corroborated by the testimony of Mr. Gardner and his wife and two daughters. It is disclosed by the evidence of the Gardners that Bowman left the animal in the barn the first time it was brought in, and that it remained there over one night; that at the time he brought the animal in he was riding Brandell's horse, and leading or driving the mare in controversy; that two or three days after the animal was again brought in by Bowman and left in Gardner's barn, and one of the daughters of Gardner testified that the mare was taken away from the barn by the defendant Brandell; that Brandell received the animal and shipped it to McCarthy was admitted by Brandell in his evidence as a witness on his own behalf. Bowman's evidence that the statement made by him to the state's attorney was arranged between himself, the defendant Brandell and McIver was fully confirmed by the witness McIver, who was a witness on the part of the state.

It is said in 12 Cyc. 455, that "it is not essential that the corroborative evidence shall cover every material point testified to by the accomplice, or be sufficient alone to warrant a verdict of guilty. If he is corroborated as to some material fact or facts, the jury may infer that he speaks the truth as to all." And this court, in the case of State v. Hicks at al., 6 S. D. 327, 60 N. W. 66, in discussing the question of corroborative evidence, said: "It is not necessary, as argued by plaintiffs in error, that the corroborative evidence of itself should be sufficient to prove the commission of the crime or establish the defendant's guilt. To require that would be to render the evidence of the accomplice unnecessary and redundant. To corroborate means to strengthen; in this case, to make stronger the probative criminating force of the accomplice's testimony. His testimony alone is not self-supporting. It must be corroborated. Its credibility must be strengthened. The requirement of the statute is not that such corroborating testimony shall prove or establish the defendant's connection with the commission of the crime, but that it shall so 'tend.' The law is complied with if there is some other evidence fairly tending to connect the defendant with the commission of the crime, so that

his conviction will not rest entirely upon the evidence of the ac-
complice." The evidence is very voluminous, and no useful pur-
pose would be served by detailing the same in this opinion. It
must suffice to say that in our view of the evidence it was amply
sufficient to warrant the jury in finding the defendant guilty of the
crime charged. The testimony of Bowman as to the transaction
resulting in the taking of the property and disposing of the same
by the defendant is very full, and shows that the taking of the
animal by him from the range of Thompson was at the request of
the defendant; and, while Bowman admits his participation in the
larceny in his attempt to shield the defendant by the fabricated
story arranged between him and the defendant and McIver, his·
testimony as a witness upon the stand was in part corroborated by
other evidence, and was given in such a manner as to carry con-
viction to the minds of the trial jury and court that he was testi-
fying truthfully in regard thereto. This court necessarily attaches
much importance to the finding of the jury and the decision of the
trial court overruling the motion for a new trial. The jury, hav-
ing observed the manner in which the witness testifies, his appear-
ance upon the stand, and all of the circumstances connected with
his testimony, are better able to determine the weight to be given
to his evidence and the credibility of the witness than this court
is upon the record before it. The trial court, also having had the
same opportunity as the jurors of observing the appearance of the
witness and the manner in which his testimony is given, also has
the opportunity of determining more fully the weight to be given
to his evidence than this court, and we may reasonably presume
from the court's denial of the motion for a new trial it was satis-
fied with the result of the verdict. Undoubtedly, had the trial
court entertained doubts as to the truthfulness of the evidence of
Bowman, or as to the defendant's guilt, it would, under the power
reposed in it by the law, have granted a new trial. In view of
these facts, therefore, the contention of appellant that the evidence
of Bowman should be disregarded by this court cannot be sus-
tained. It will be noticed that in this case the witness Bowman
had not testified to a different state of facts on any trial of the

action.    It is true he admits that he made contradictory state-
ments to the state's attorney and other parties, but he fully ex-
plained the circumstances under which the statements were made
and his reason for making the same.   The appellant has cited cases
in which the appellate court has deemed it its duty to disregard
the statements of a witness made at the trial, but the cases show
that the witness in a former trial or trials had given evidence
entirely different from that being considered by the appellate
court, and, in view of this conflicting evidence, the appellate court
had declined to give any weight to the testimony of the witness in
the later trial.   The cases in which the appellate court made such
holdings presented peculiar circumstances not applicable to the
case at bar.

It is further contended by the appellant that the court erred
in its charge to the jury and in refusing to give the first instruc-
tion requested by the appellant.   The instruction requested is as
follows : "You are instructed, gentlemen of the jury, that, in order
to establish a charge by circumstantial evidence, it is necessary
that the proof should be not only consistent with the defendant's
guilt, but inconsistent with his innocence, and if a single material
circumstance remains unproved, or, if proven, is inconsistent with
the theory of guilt, the crime is not proven with that certainty
which the law requires, and you should acquit the defendant, and
circumstantial evidence to justify an inference of guilt must ex-
clude to the moral certainty every other reasonable hypothesis."
In the view we take of the case, there was very little, if any, cir-
cumstantial evidence introduced on the part of the state, and hence
the giving of such an instruction would have been clearly error.
People v. Burns, 121 Cal. 529, 53 Pac. 1096; People v. Lonnen,
139 Cal. 634, 73 Pac. 586.   In People v. Lonnen, supra, the
Supreme Court of California in discussing a refusal to give a sim-
ilar instruction says: "There was no error in this for the reason
that, while there was some circumstantial evidence in the case,
these circumstances only went to corroborate the main evidence
which consisted of the direct testimony of the prosecuting witness,
etc.,   This could not be properly called 'a case of circumstantial

evidence,' and therefore it was not proper to give instructions implying it was such a case."

It is further contended by the appellant that the court erred in calling the jury's special attention to the witness Bowman, and that the reference to Bowman by the court constituted prejudicial error, but we are of the opinion that there is no merit in this contention. The court in its instructions to the jury, after defining an accomplice and an accessory, says: "The testimony of the witness Bowman himself standing undisputed in the case shows that he would be at least an accessory, but, as there is dispute as to the other, the court will make no comment as to whether he is an accomplice, but will leave that to you to say. Now, it is for you to say yourselves whether or not Bowman was an accomplice, and, if you believe from the evidence that he was, then his evidence would have to be corroborated in the way I have said before you could convict the defendant. * * * In other words, if you are satisfied from the evidence that he is corroborated, that there is other evidence besides his which tends to connect the defendant with the commission of the crime, then the question need not be settled as to whether or not he was an accomplice. In a criminal case a defendant is presumed to be innocent until the contrary is proved, and, in case of a reasonable doubt as to whether or not his guilt is satisfactorily shown, he is entitled to be acquitted. * * *" Again, the court says: "If you are satisfied beyond a reasonable doubt that the Thompson mare in question was stolen, and that this defendant participated in the crime, then it is your duty to find him guilty. If you are not so satisfied, it is your duty equally to acquit him." It will be seen that it was not only proper to call the attention of the jury to the witness Bowman who was claimed to be either an accomplice or an accessory, but it was essential in the charge for the court to particularly call the jury's attention to the fact that the position of Bowman in the case was such that their attention should be specially called to it, in order that they might properly discriminate and weigh his evidence in the case.

It is further contended by the appellant that the court erred in the following portion of its charge to the jury: "The guilt or

innocence of the defendant, after all is said and done, turns, we
might say, upon the truthfulness of the testimony of the witness
Charles Bowman. Now, in order that you may understand what
weight to give this testimony, I will give to you the definition of
an 'accomplice' for your use in case you find this witness Bow-
man was an accomplice." The court then read the provisions of
our Code relating to accomplices and also relating to accessories,
and then proceeds: "You can, if you are otherwise satisfied, con-
vict a man on the testimony alone of an accessory, while you
could not on that alone of an accomplice.' I have made this dis-
tinction between an 'accessory' and an 'accomplice' because many
people  *   *   *  confuse the two terms and might consider an
accessory to be technically an accomplice.  *   *   *" Then fol-
lows the portion of the charge we have before quoted. It is con-
tended by the appellant that it was error for the court to specific-
ally refer to any witness, and make the guilt of the defendant
depend solely upon his testimony; that the jury might have be-
lieved this testimony and still this would not have proved the
corpus delicti, nor have established the defendant's guilt. The
jury, though believing the testimony of Bowman, might have had
doubt as to whether or not the animal in question was Thomp-
son's. We are of the opinion that this criticism of the judge's
charge to the jury is not warranted when the whole charge is
taken together. The court, as we have seen, had stated to the jury
that the guilt of the defendant must be established to their satis-
faction beyond a reasonable doubt, and that this had been twice
repeated to the jury. It was not necessary for the court in dis-
cussing the question as to whether Bowman was an accomplice or
an accessory to again specifically charge the jury that they must
be satisfied of the guilt of the defendant beyond a reasonable
doubt. When that is once clearly and fully stated to the jury by
the court, it is sufficient. In 12 Cyc. 656, it is said: "A charge
on reasonable doubt as to the whole case and on all the evidence
is sufficient. It is not incumbent upon the court to carve the case
of the evidence into different propositions and in the charge apply
the rule of reasonable doubt to each separately." It will be

noticed that the court has stated in two different parts of his charge that the jury must be satisfied of the guilt of the defendant beyond a reasonable doubt. After a careful examination of the charge of the court, we are satisfied the same fairly and clearly stated the law to the jury and that the court committed no error in the same.

Numerous errors are assigned as to the admission and rejection of evidence, but, after a careful examination of the same, we are satisfied that the court committed no prejudicial or reversible error in the admission or rejection of evidence, and, in the view we have taken of the case, we do not deem it necessary to discuss these alleged errors separately in this opinion. It necessarily results from the conclusions arrived at by this court that the trial court committed no error in denying defendant's motion for a new trial.

The judgment of the circuit court and order denying a new trial are affirmed.