STATE, Respondent v. BARCLEY, Appellant

(225 N.W. 2d 875)

(File Nos. 11346, 11347. Opinion filed February 12, 1975)

William G. Taylor, Jr., Sioux Falls, for defendant-appellant.

Kermit Sande, Atty. Gen., Marvin Truhe, Asst. Atty. Gen., Pierre, for plaintiff-respondent.

RENTTO, Judge.*

The defendant Homer Nelson Barcley was charged in one information with having committed the offense of forgery in the third degree on five occasions. In a second information he was accused of committing the same offense on another occasion and the offense of attempted forgery in the third degree. These were all charged in separate counts. Four crimes of forgery in the third degree were committed January 19, 1973, the remaining two and the one of attempted forgery on January 20, 1973. The charges

---

* Retired Supreme Court Judge acting pursuant to SDCL 16-1-5.

against him are brought under SDCL 22-39-26 which makes trafficking in forgeries, forgery in the third degree.

The two informations were consolidated for trial and the defendant found guilty by the jury on all counts. Two judgments sentencing him to imprisonment on all counts were entered, one on each information. He appeals from both judgments with common assignments of error. They were argued here as one cause urging four reasons for reversal.

During the morning or early afternoon of Friday, January 19, 1973, the checkbook of the West Sioux Falls Hardware Store disappeared from its place of business. It contained numbered checks of the firm with its name printed thereon as the drawer of the checks and two lines for the signatures of the persons issuing them. That evening at about nine o'clock one of the checks, with an amount and the name of a payee written in, was cashed at a liquor store in Sioux Falls. On the first line below the name of the firm it was designated a payroll check, and on the second line was written the name of the owner of the firm. Later that night three similar checks were cashed at three other liquor stores.

On the morning of the following day, Saturday, January 20, 1973, two similar checks were cashed, one at a jewelry store and the other at an establishment selling radios. That night another similar check was presented to a liquor store for cashing. These seven checks were all made payable to the same payee.

The employee at the last mentioned liquor store, who had to approve all checks presented for cashing, had learned of the loss of the checkbook from the West Sioux Falls Hardware Store. When the check was presented to him he had another employee notify the police while he delayed his approval of it and engaged the man presenting it in conversation. The latter apparently soon sensed the situation and left the bar without getting the check cashed or having it returned to him, or consuming the drink he had ordered. The police arrived while he was in the bar's parking lot and took him into custody. The individual they arrested was the defendant.

That these instruments were forgeries is not disputed. Apparently at the preliminary hearing all of the parties to whom

the checks in question were delivered, identified the defendant as the person who passed the checks to them. To prevent the state from using such evidence at the trial, he made a motion in limine to suppress their testimony relating to identification. It was grounded on the claim that pictures of the defendant had been exhibited to the witnesses before trial in such a manner as to render inadmissible their identification testimony at the trial. The motion was denied. He·contends that in admitting this identification testimony the trial court erred.

After defendant was taken into custody the police had reason to believe that he was the one who had presented the other checks. Pursuing this they looked over some 200 photographs and assembled a collection of pictures of nine men, including one of him—Ex. 8, which they showed to the persons who had taken the checks. These were police photos, all about the same size, of the subjects in civilian dress with a frontal view and a right profile. All bore the dates on which they had been taken. Their procedure was to go to these people individually, or have them come to the police department, and ask them to look over the pictures to see if they could identify one of them as being the man who passed the check. This was done within a day or two after his arrest. None of them had any difficulty picking out the defendant.

In support of his position he cites and principally relies on Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. In that case the court said:

> "* * * convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Other cases considering this subject are collected in the annotation "Photographic Identification-Suggestiveness" in 39 A.L.R.3d 1000. Establishing that the procedures were impermissibly suggestive is the burden of the one seeking to suppress the evidence. The trial court found there was nothing suggestive about the procedures employed. The record supports that conclusion.

We think the rule above quoted from Simmons must be viewed and applied in the light of the influences that court thought contributed to errors in identifying criminals. They are set forth in this statement from the opinion:

> "It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime."

None of the described factors are present in this case. On the contrary, all of the witnesses had from five to ten deliberate minutes to view the defendant under good lighting. In the collection was only one photograph of him among the nine and it was not emphasized in any manner. Further the police did not indicate, hint or suggest that Ex. 8 was the one they should select. That it was dated 1-21-73 does not appear to have been suggestive. It was not mentioned by anyone in the pretrial viewing.

Defendant's upper left eyelid drooped noticeably. This was mentioned by several of the witnesses in their in-court identification. On his behalf it is urged that this feature, of itself, made the photographic identification procedures impermissibly suggestive. We do not share this view. Obviously it made his identification an easier matter for the witnesses, but it did not make improper the employment of the photographs by the police. Concerning

this the trial court observed that two other pictures, Ex. 2 and Ex. 4, indicate some similarity in the condition of the left eye. On this record we are satisfied there was no error in the identification of the defendant.

■ On the day his trial had been scheduled to begin, May 15, 1973, defendant asked to have it continued over the term. His reason for this was the absence of a witness. It was asserted that this witness would support an alibi on his behalf. In spite of serious reservations as to the merits of the application, the court continued the trial to May 29, 1973, a later date in the same term. On that date the motion was renewed. The denial of this is assigned as error.

In SDCL 23-42-5, it is provided that:

> "When an indictment or information is called for trial, or at any time previous thereto, the court may, upon sufficient cause shown by either party, direct the trial to be postponed to another day in the same or next term."

Construing the predecessor of this section in State v. Wilcox, 21 S.D. 532, 114 N.W. 687, this court said:

> "The trial court should first determine whether the defendant is entitled to a continuance; whether he has shown that the testimony of the absent witness would be material; whether he has used due diligence to procure the attendance of the witness or his deposition; and whether it is reasonably certain that his presence or testimony will be procured by the time to which the trial would be postponed. If the showing fails in either of these respects the application to continue should be denied."

See also State v. Davies, 33 S.D. 243, 145 N.W. 719, Ann.Cas. 1916A, 1102.

■ The granting or refusing of an application for continuance is a matter within the sound discretion of the trial court. We may disturb its ruling only for a clear abuse of that

discretion. There is no proof here by affidavit or otherwise that he had used due diligence to secure the attendance of the witness. Nor is there any showing it is reasonably certain his presence could be procured at the next term of court. Since the showing fails in these regards, it was not error to deny the motion. State v. Johnson, 76 S.D. 37, 71 N.W.2d 733. The burden of proving these was on the defendant.

Defendant next complains that the court deprived him of the opportunity to have a presentence investigation. Provision for such is made by SDCL 23-48-17. That section states:

> "In addition or in the alternative to the provisions of § 23-48-16 and upon the defendant's consent made in open court to the obtaining and consideration thereof by the court in the mitigation or aggravation of punishment and the defendant's consent to the deferring of time of sentencing until such report is received by the court, the circuit court may order the executive director of the board of pardons and paroles to make a presentence investigation and written report to the court."

The legislature by directing that "the circuit court may order" the investigation committed it to the court's discretion. An attempt in the 1974 session of our legislature to make the report mandatory in felony cases did not succeed. See Senate Bill No. 168. Various presentence statutes are discussed in Section 4.1 of the ABA Standards Relating to Sentencing Alternatives and Procedures. Ours is not of the preferred type.

When the verdict was declared and the jury dismissed, the defendant requested a presentence investigation. His counsel suggested that it be done by a group known as Alternatives to Incarceration in which he was personally involved. Defendant concurred in this. The court stated that if it ordered an investigation, it would be done as provided in SDCL 23-48-17, and further stated that if a presentence investigation by the designated state agency was requested, it would be ordered. That seems to have met with the defendant's approval.

Concerning the matter of a sentence the court then told the defendant that he was aware of one prior felony conviction that

he had and because of it, any sentences entered in these matters could not be suspended. He further informed him that the prior felony conviction of which he had knowledge was one in this state. He also remarked that the investigation might disclose other prior violations of the law that the court was not aware of, which would place him in a less favorable sentencing light than he was in at that time.

On being asked whether he still wanted the investigation, after conferring with his counsel, he withdrew his request for it. Thereupon the court announced he would not order .one. At the time of sentencing the State attempted to inform the court of felony convictions of the defendant outside of South Dakota, but he would not permit it; and reiterated that he would consider only the South Dakota conviction, as he had previously assured the defendant.

As above indicated, the ordering of a presentence investigation under SDCL 23-48-17 is discretionary with the court. It does not follow just because one is requested by the defendant. However, it may not be done without his consent. While the defendant did not expressly consent to it, his request for it at least implied his consent. In that posture it was for the court to determine whether the investigation and report would be had. After the defendant withdrew his consent to an investigation · the court was without authority to order it.

His last point is that the checks on which the six charges of forgery in the third degree are based were not sufficiently identified by the respective witnesses to be admitted in evidence. This contention is without merit. He concedes that "each witness identified the check as being one that was passed to them at their particular place of business." The identification was not required to be positive or to an absolute certainty as he seems to suggest. Wigmore on Evidence (Third Edition) § 658, 22A C.J.S. Criminal Law § 712. Their admissibility was addressed to the court's discretion. From our study of the record we are satisfied that on the evidence the jury could fairly find that they were the checks which the defendant delivered to them. Accordingly, the court did not err in overruling his objections to their admission.

Affirmed.

WINANS, WOLLMAN, DOYLE and COLER, JJ., concur.

RENTTO, Retired Judge, sitting for DUNN, C. J., disqualified.