STATE of South Dakota, Plaintiff
and Appellee,

v.

Richard A. TRAVERSIE, Defendant
and Appellant.

No. 15025.

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 1986.

Decided April 23, 1986.

Thomas Harmon, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Richard Braithwaite, of Braithwaite Law Offices, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

### ACTION/FACTS

This is a criminal appeal arising from an Amended Judgment of Conviction which sentenced Richard A. Traversie (Traversie), appellant-defendant herein, to 35 years' imprisonment for First-Degree Burglary, Petty Theft, and being an Habitual Offender. We affirm.

On the evening of November 15, 1984, a trailer house was burglarized in Pierre, South Dakota, and a radio-cassette player and tapes were taken. About 9:30 that same evening, this radio-cassette player was seen in Traversie's possession at a drinking party which eventually lasted two days. When the cups were empty—when the party ran dry—Traversie persuaded three of the imbibers to "hock his radio" to obtain more spirits. The radio-cassette player sold for $6.00 which was thereafter exchanged for a pack of cigarettes and a half-gallon of wine.

On December 6, 1984, while in jail on other charges, Traversie was served a Warrant of Arrest for First-Degree Burglary and Petty Theft. A preliminary hearing was conducted on December 11, 1984, and Traversie was bound over for trial. On December 17, 1984, a Part II Information for Habitual Offender was also filed.

A hearing was held on December 21, 1984. At this hearing, Traversie's burglary and petty theft trial was set for March 20, 1985. This date was selected because Traversie had two misdemeanor offenses to be tried to separate jury panels and only two panels had been called for the first two months in 1985. Traversie's burglary and petty theft trial had to therefore wait until March for a new jury panel.

Traversie's burglary and petty theft trial was not held in March because the trial court granted Traversie's motion to appoint a fingerprint expert at county expense. Trial was then set for May 2, 1985. On the day prior to trial, the State, upon oral motion and after a hearing thereon, was granted a two-week continuance. It appears that the resident of the burglarized trailer house and Traversie's girlfriend could not be located whereupon the State requested a continuance so as to locate these witnesses.

A jury found Traversie guilty as charged on May 15, 1985. Thereafter, and based on Traversie's admissions to the Habitual Offender Information, the trial court determined Traversie was an habitual offender and sentenced him to 35 years' imprisonment in the South Dakota State Penitentiary and a concurrent term of 10 days in the county jail.

From this Amended Judgment of Conviction, Traversie now appeals alleging a host of errors. We appreciate a 35-year prison sentence is sever and we address each allegation of error seriatim.

## DECISION

### I.

TRAVERSIE CONTENDS THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING THE MAY CONTINUANCE. WE HOLD OTHERWISE.

The grant or denial of a continuance is within the sound discretion of the trial court, *State v. Barcley*, 88 S.D. 584, 589, 225 N.W.2d 875, 878 (1975), and the "ruling thereon will not be reversed by this court, unless there has been a manifest abuse of such discretion." *State v. Brandell*, 26 S.D. 642, 645, 129 N.W. 242, 243 (1910).

On appeal, Traversie contends that the trial court was without authority to postpone his trial because an affidavit was not filed as required by SDCL 15–11–7, which provides:

An application for continuance on account of the absence of a witness must be supported by the affidavit of the party, his agent, or attorney, stating:

(1) The name and residence of such witness, or if unknown, the efforts made to ascertain the same;

(2) The testimony such witness would give if present, in narrative form or by questions and answers as in a deposition; that the affiant believes such testimony to be true and knows of no other person by whom the same facts may be proven, or if he knows of such other person, then the reasons why the testimony of such witness is necessary;

(3) The reason why the deposition of the witness was not taken;

(4) What efforts have been made to obtain the attendance of the witness or his testimony;

(5) Facts showing ground for belief that the attendance or deposition of such witness may be procured at the next term of the court.

SDCL Title 15, however, is the title covering Civil Procedure. Although in *State v. Lohnes*, 266 N.W.2d 109, 112 (S.D.1978), this Court intimated, in a criminal setting, that the above-quoted statute "requires that an affidavit be filed to support a motion for continuance on account of the absence of a witness[,]" we have also previously held, in criminal cases, that a motion for a continuance must be supported by affidavit *or other showing*. *See Barcley*, 88 S.D. at 590, 225 N.W.2d at 878; *State v. O'Connor*, 84 S.D. 449, 452, 173 N.W.2d 48, 49 (1969); and *State v. Johnson*, 76 S.D. 37, 41, 71 N.W.2d 733, 735 (1955).

SDCL Title 23A is the title containing provisions governing Criminal Procedure. SDCL 23A–44–1 provides:

An application to a court for an order shall be by motion. A motion other than one made during a trial or hearing shall be in writing *unless the court permits it to be made orally.* It shall state the grounds upon which it is made and shall set forth the relief or order sought. It may be supported by an affidavit. (Emphasis supplied.)

SDCL 23A–44–11 provides: "Each court may provide for placing criminal proceedings upon appropriate calendars. Preference shall be given to criminal proceedings as far as practicable."

We interpret these Criminal Procedure statutes as permitting trial courts to consider oral motions for continuances. Although it would be preferable that such motions be accompanied by appropriate affidavits, we cannot permit the Civil Procedure mandate of SDCL 15–11–7 to shackle our trial courts in criminal cases to consider only those motions supported by affidavit. Additionally, we note that with the adoption of SDCL ch. 23A–44 on July 1, 1978, the precedent of *Lohnes*, as relevant and asserted herein, was statutorily overruled. Again, however, we express that it is better practice to accompany these motions with affidavits.

The oral motion for continuance, due to the absence of a witness, met the criteria outlined in *Barcley.* Therefore, we conclude the trial court did not abuse its discretion.

## II.

TRAVERSIE'S CONTENTION OF A DENIAL TO A SPEEDY PUBLIC TRIAL IS UNTENABLE.

 Four factors must be considered in determining if the right to a speedy trial has been violated. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972). The first factor is the length of the delay. In this case, 154 days transpired between Traversie's first

appearance before the trial court and his actual trial. We do not believe the record substantiates an unreasonable delay.*

The second factor is the reason for delay. This factor, however, does not support a speedy trial violation. Because Traversie was standing trial before the first two 1985 jury panels, his burglary and petty theft trial had to wait until the third 1985 jury panel was called in March. In March, however, Traversie was permitted to obtain a fingerprint expert at county expense. Selection of an expert and preparation for trial required time. Finally, just before the first May trial date, the State was unable to procure two witnesses. It thereupon sought a short continuance so as to obtain their presence at trial. Under these circumstances, we hold there was no unreasonable delay.

We next consider if Traversie asserted his right to a speedy trial. This he repeatedly did and therefore he is not remiss in failing to advance his cause. The fourth factor is the prejudice, if any, to Traversie. There is no prejudice to Traversie's interests revealed by this record. His defense was not impaired and his freedom not restricted as he was at all times incarcerated on other charges. Therefore, we reject Traversie's speedy trial assertions.

## III.

ADELIA GOODBIRD'S WRITTEN HEARSAY STATEMENT WAS NOT PROPERLY ADMITTED. AS IT WAS CUMULATIVE EVIDENCE, WE HOLD ITS ADMISSION WAS NOT PREJUDICIAL ERROR.

During the initial police investigation, Adelia Goodbird, Traversie's alleged girlfriend, made a written statement which read:

I saw the radio last night at Julia Hawk's place about 9:30. Rick gave it to me. I left it at Julia's and I went to work. When I came back it was gone. Me and

---

* SDCL 23A–44–5.1, although not effective during the events in question, provides a time limit of 180 days from first appearance to trial.

Rick were listening to it this morning. The Rick I'm [referring] to is Rick Traversie.

On May 1, 1985, during the hearing on the State's Motion for a Continuance, the State requested that if the resident of the burglarized trailer was unavailable for trial, his statements be allowed at trial under the residual hearsay exception in SDCL 19–16–35. In addition, at this hearing, the State recited that it was having difficulty finding Adelia Goodbird, but that it would be willing to proceed without her testimony.

■ At trial, Goodbird's written statement was admitted over objection and on appeal, Traversie contends the admission of this statement was erroneous because it lacked sufficient indicia of reliability. He further maintains the notice requirements of SDCL 19–16–35 were not met. We agree with Traversie's contention regarding failure to provide notice.

SDCL 19–16–35 provides:

A statement not specifically covered by any of §§ 19–16–30 to 19–16–34, inclusive, but having equivalent circumstantial guarantees of trustworthiness, is not excluded by § 19–16–4 if the declarant is unavailable as a witness and if the court determines that

(1) the statement is offered as evidence of a material fact;

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

However, a statement may not be admitted under this section unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

The State did not make known to Traversie its intention to offer Goodbird's statement under the residual hearsay exception. On the contrary, at the continuance hearing, the State said it would be willing to proceed without Goodbird's testimony. Having failed to comply with the notice requirements of SDCL 19–16–35, we hold that Goodbird's written statement was improperly admitted.

■ However, although its admission was improper, we find it to be harmless error. Goodbird's statement was sought to be admitted so as to place the radio-cassette player in Traversie's possession shortly after the burglary. Other testimony, however, places the radio-cassette player in Traversie's possession on the night of the burglary. Goodbird's short, written statement was therefore cumulative. We determine that its admission was harmless under the circumstances.

## IV.

DID THE TRIAL COURT ABUSE ITS DISCRETION BY SEQUESTERING TRAVERSIE'S FINGERPRINT EXPERT? WE HOLD IT DID NOT.

All witnesses were sequestered at trial. Notwithstanding, Traversie moved that his fingerprint expert be permitted to hear the testimony of the State's fingerprint expert. The trial court, however, denied this motion. On appeal, Traversie contends the trial court abused its discretion, but we disagree.

■ The sequestering of witnesses is within the trial court's discretion, *State v. Johnson*, 254 N.W.2d 114, 117 (S.D.1977); and this includes the sequestering of expert witnesses. *Lewis v. Owen*, 395 F.2d 537, 541 (10th Cir.1968). While witnesses who are to testify in an expert capacity only and not to the facts of the case should be exempt from a sequestration order, *Morvant v. Constr. Aggregates Corp.*, 570 F.2d 626, 629 (6th Cir.1978), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 44, 58 L.Ed.2d 94 (1978); and it has been general-

ly held or stated that experts are usually excepted from sequestration, *see State v. Goff,* 174 Neb. 548, 557–59, 118 N.W.2d 625, 632 (1962); *Leache v. State,* 22 Tex. Crim. 279, 305–07, 3 S.W. 539, 541 (1886); *Elizabeth River Tunnel Dist. v. Beecher,* 202 Va. 452, 459–61, 117 S.E.2d 685, 691–92, 85 A.L.R.2d 469, 478 (1961); and 23 C.J.S. *Criminal Law* § 1011(b), at 1084 (1961); numerous cases have held that the sequestering of an expert witness was not an abuse of discretion. *See, e.g., Arkansas Power & Light Co. v. Melkovitz,* 11 Ark.App. 90, 668 S.W.2d 37 (1984); *McVeigh v. State,* 73 So.2d 694 (Fla.1954), *appeal dismissed,* 348 U.S. 885, 75 S.Ct. 210, 99 L.Ed. 696 (1954); *People v. Beasley,* 55 Mich.App. 583, 223 N.W.2d 77 (1974); *Village of Oakwood v. Makar,* 11 Ohio Bar Rep. 79, 11 Ohio App.3d 46, 463 N.E.2d 61 (1983); *Watson v. State,* 161 Tex.Crim.R. 5, 273 S.W.2d 879 (1954); and *Leache,* 3 S.W. 539.

■ Traversie contends it was vital that his fingerprint expert be able to know the findings, opinions, and conclusions of the State's fingerprint expert so that he might assist defense counsel in cross-examination and presentation of his own testimony. The record reveals, however, that both fingerprint experts had access to the physical evidence and that the two expert witnesses met and discussed their conclusions just prior to trial. Thus, it does not appear that Traversie's expert's presence was required during the trial so as to ascertain facts or data upon which to base his expert opinion. SDCL 19–15–3. Nor does it appear that the expert's presence was essential to the presentation of Traversie's cause, SDCL 19–14–29(3), for this statutory provision "contemplates such persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management of the litigation." 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 615, at 615–3 (1985). Since it does not appear that Traversie's expert was needed to advise counsel in the management of the case, we find no abuse of discretion. We reiterate, however, that if an expert witness is to testify in an expert

capacity only and not to the facts of the case, *Morvant,* 570 F.2d at 629; or if the witness is to base his expert opinion on facts or data presented at trial, SDCL 19–15–3, the expert should be exempt from sequestration.

## V.

### DID THE TRIAL COURT FAIL TO INSTRUCT THE JURY ON THE BURDEN OF PROOF? WE HOLD IT DID NOT.

■ Traversie contends the trial court did not instruct the jury as to the State's burden of proof and that this prejudiced his defense. The jury instructions do not contain a separate burden of proof instruction, but several instructions do instruct the jury as to the elements of the alleged offenses, that the State must prove these matters, and the degree of proof required. Traversie's contention to the contrary is without merit. The instructions are to be viewed as a whole. *State v. White Mountain,* 332 N.W.2d 726, 728 (S.D.1983).

## VI.

### TRAVERSIE CONTENDS JURY INSTRUCTION NO. 16 IMPERMISSIBLY SHIFTED THE BURDEN OF PROOF TO HIM. WE HOLD OTHERWISE.

Jury Instruction No. 16 states:

If from the evidence you are convinced beyond a reasonable doubt that the personal property in question was stolen, and that soon after its theft the defendant was in possession of it, such is a circumstance which you may take into consideration with all the other evidence in arriving at your verdict, and unless such possession is *satisfactorily explained by the facts and circumstances brought out upon trial,* it is sufficient upon which to base a conviction, provided that upon the whole case and all of the evidence you are satisfied beyond a reasonable doubt of the defendant's guilt. But if you believe that the recent possession by the defendant of the property, *under the circumstances shown,* is con-

sistent with his innocence, it would be your duty to acquit him, unless you find beyond a reasonable doubt from other evidence in the case that the defendant is guilty. (Emphasis supplied.)

On appeal, Traversie contends the emphasized portions of this instruction shifts the burden of proof and persuasion to him and creates a rebuttable presumption. With this contention, we disagree.

■ If an instruction creates a mandatory presumption, either conclusive or rebuttable, it is constitutionally infirm if it relieves the State of the burden of persuasion on an element of an offense. *Francis v. Franklin*, 471 U.S. ——, ——, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344, 353 (1985). "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts." *Id.*

■ A permissive inference, however, which suggests possible conclusions if the State proves predicate facts but does not require the drawing of the conclusion, is constitutionally infirm "only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Id.*, 471 U.S. at ——, 105 S.Ct. at 1971, 85 L.Ed.2d at 354.

■ We do not read this instruction as shifting the State's burden of proof, or creating a mandatory presumption which directs the jury that it *must* infer Traversie stole the radio-cassette player by his recent possession of it and therefore he is guilty of petty theft. Rather, we read this instruction as suggesting possible conclusions that *may* be drawn which reason and common sense justify in light of the proven facts before the jury. The facts show that Traversie showed up at the drinking party with the radio-cassette player shortly after the burglary. From this, it is reasonable to permissively infer petty theft. No shift in the burden of proof occurs and no impermissible presumption is created.

## VII.

DID THE INSTRUCTIONS PERMIT THE JURY TO FIND TRAVERSIE GUILTY OF FIRST-DEGREE BURGLARY BASED SOLELY UPON THE POSSESSION OF RECENTLY STOLEN PROPERTY? WE CANNOT AGREE WITH TRAVERSIE ON THIS CLAIMED ERROR.

■ Traversie contends that because the jury was not informed that Jury Instruction No. 16 applied only to the Petty Theft charge, Instruction No. 16 permitted the jury to convict him of First-Degree Burglary based on his possession of recently stolen property.

Jury instructions, however, "are to be considered as a whole, and if the instructions when so read correctly state the law and inform the jury, they are sufficient." *State v. Poss*, 298 N.W.2d 80, 84 (S.D.1980). In the present case, the jury was instructed that the instructions must be considered as a whole. The jury was instructed as to the elements of burglary, theft and the necessity of an act performed with specific intent. Jury Instruction No. 16 relates to "personal property," "possession," and "theft." Jury Instruction No. 17 states the test of recency between the alleged theft and the time of possession of the property. Considered as a whole, the instructions correctly inform the jury concerning theft and recent possession of stolen property. Traversie's interpretation of the instructions is not a reasonable reading thereof.

## VIII.

WAS TRIAL COUNSEL'S REPRESENTATION INEFFECTIVE? NEW COUNSEL AT APPELLATE LEVEL SO ADVOCATES BUT WE DISAGREE.

■ Traversie asserts that he was denied effective assistance of counsel because his trial counsel did not object to the trial court's failure to instruct on the burden of proof or to the trial court's failure to limit the instruction on possession of recently stolen property to the Petty Theft charge. These contentions, however, are without merit. As stated above, the jury instructions did inform the jury as to the burden of proof. Jury Instruction No. 16, when

read in conjunction with all of the instructions, is applicable to the Petty Theft charge only. The record is thus devoid of any asserted ineffective assistance claims.

## IX.

### WAS THE SENTENCE CRUEL AND UNUSUAL PUNISHMENT? WE DO NOT SO FIND.

■ Traversie asserts a rather cursory argument that a 35-year prison sentence for burglary is cruel and unusual punishment in that it is disproportional to the crime committed. Traversie, however, swerves from the obvious conclusion that he was sentenced as an habitual criminal. Prior to the convictions here in question, he was convicted of four prior felonies. Thus, under SDCL 22–7–8.1 and SDCL 22–6–1(1), we consider that Traversie could have been sentenced to life imprisonment and he is an habitual criminal. Enhancement of his punishment was intentional and arose from the very history of his criminal activities. Additionally, there is no record below (statistics, comparisons, etc.) to warrant an in-depth proportionality review.

Affirmed.

MORGAN and WUEST, JJ., concur.

FOSHEIM, C.J., and HERTZ, Circuit Judge, Acting as Supreme Court Justice, concur specially.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HERTZ, Acting Justice (concurring specially).

I concur specially in order to indicate that in my opinion expert witnesses should generally be excepted from the sequestration order, absent special and compelling circumstances.

In this case, at the State's request, the trial court sequestered all witnesses, including the defendant's fingerprint expert.

The State, as a basis for the sequestration order, claimed that by allowing defendant's expert in the courtroom, it would permit him to testify as to areas of agreement or disagreement with the State's expert testimony. But what is wrong with that? The issue in which the experts were to testify, was, "When was defendant's fingerprint placed on the victim's window?" Just how is defendant's expert to intelligently respond to this issue without hearing the other's testimony before the jury? The State's expert may well have deviated from some of his findings and conclusions set out in his report previously furnished to defendant's expert. Because of the highly technical nature of this kind of testimony, this deviation could go unchallenged where defendant's counsel fails to discern the deviation or otherwise misconstrues it.

Under the circumstances of this case, however, it would appear that the defendant was not prejudiced by the sequestration order because both experts had exchanged and discussed their conclusions prior to trial. Further, if there in fact was any prejudice, it was harmless error in light of the entire record.

There is very little law on this particular subject. At 23 C.J.S. *Criminal Law* § 1011 (1961) it is stated:

There is no absolute rule of law which requires the exemption of expert witnesses from the rule or order excluding witnesses from the courtroom. The matter is within the sound discretion of the trial court; in the exercise of this discretion such exemption may be made, and it has been stated broadly that ordinarily such witnesses are exempted.

It is also stated at 75 Am.Jur.2d *Trial* § 62 (1974) that "While it is usual to ... except expert witnesses from the operation of the [sequestration] rule, a refusal to do so does not necessarily constitute error." This indicates that the civil rule is the same as the rule in criminal cases.

I write on this issue because I firmly believe the experts ought to be present during each other's testimony, absent a compelling reason to the contrary. It is only in this way that the experts can intelli-

gently respond to the issue and assist the jury in the fact finding process.

I am hereby authorized to state that Chief Justice FOSHEIM joins in this special concurrence.