**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Richard HERRALD, Defendant and Appellant.**

No. 12170.

Supreme Court of South Dakota.

Submitted on Briefs May 11, 1978.

Decided Sept. 6, 1978.

Peter H. Lieberman, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Randal E. Connelly, Pennington County Asst. Public Defender, Rapid City, for defendant and appellant.

PORTER, Justice.

## CASE SUMMARY

█ This is an appeal from a conviction for grand larceny in violation of SDCL 22–37–1 and 22–37–2.[1] Defendant urges that the evidence was insufficient to sustain the jury verdict. We hold that the State's evidence, while circumstantial, was sufficient to support a rational theory of defendant's guilt, and we therefore affirm his conviction.

## FACTS

Willard Lage, a building contractor, owned building materials which he had stored near Corral Drive in Rapid City, just north of his house. There were four "bunks," or pallets, of cedar shake shingles in that area at 4:30 p. m. on July 28, 1976.

Mr. and Mrs. Robert Stephens lived about two blocks north of Lage's house. Mrs. Stephens saw a dark colored pickup truck with a high box traveling up Corral Drive in the direction of Lage's storage area. This took place sometime after 10:30 p. m. on July 28. A few minutes later she saw the same truck come down the hill. Later she saw it go back up Corral Drive.

At about 12:05 a. m. July 29, Mr. Stephens saw a vehicle answering the same

---

1. SDCL 22–37–1 read:

    Larceny is the taking of personal property accomplished by fraud or stealth and with intent to deprive another thereof.

   SDCL 22–37–2 read:

    Grand larceny is larceny committed in any of the following cases:

    (1) When the property taken is of a value exceeding fifty dollars;

    (2) When such property, although not of a value exceeding fifty dollars, is taken from the person of another;

    (3) When such property is livestock.

    Larceny in other cases is petit larceny.
   SDCL ch. 22–37 was repealed by 1976 S.D. Sess.L. ch. 158, § 37–5. This change was effective October 1, 1977, 1977 S.D.Sess.L. ch. 190, § 641. The subject matter of the repealed chapter is now dealt with in SDCL ch. 22–30A, Theft.

description leave Lage's storage area and start down Corral Drive. He did not know how many people were in the truck, could not identify anyone, and did not see in the back of the truck. A similar truck was also seen parked on Corral Drive sometime between 11:45 and 12:15 on the same night.

At about 3:05 a. m. on July 29, Stephens saw what looked like the same truck drive up Corral Drive and into Lage's storage area. He called Lage and told him what he had seen. The two men then went to the storage area in Lage's car. The truck was backed up to the area where the cedar shakes were stored. Lage determined that approximately two and one-half bunks of shakes were missing.

There were three men in the truck. Lage inquired what their business was and why they were on his property. One of the men indicated they had stopped to urinate and have a drink. He stated that they were about to leave. Lage then blocked the truck with his car, while Stephens went to call the sheriff's office. Defendant was one of the three men in the truck at this time.

Deputy Sheriff Kenneth Gardner arrived about forty-five minutes later. He inspected the truck and the area, and then arrested defendant and his two companions. Two pieces of wood were found in the truck: one was a "strapping slat" used to protect cedar shakes from the metal strapping which holds bundles together. The other was a small piece of cedar shake. After taking defendant and the other two suspects to jail, the deputy returned and found in the truck a packaging slip from a bundle of cedar shakes. It was identical to tags on the bundles left at the scene. Lage testified that these cedar shakes were the only ones he had ever seen with this type of label.

The next morning, a deputy sheriff talked to defendant, who denied knowledge of any theft. The deputy took defendant's clothes and sent them, together with the piece of cedar shake from the suspect truck and cedar shakes from Lage's storage area, to the Federal Bureau of Investigation in Washington, D. C. They were analyzed by an F.B.I. expert who testified that the clothes contained wood shavings, splinters, or sawdust of Western Red Cedar. This was the same species of tree from which the shakes sent to the F.B.I. were cut.

Defendant called witnesses who testified that he was in a bar drinking from about 7:30 p. m. to about 2:30 a. m. with the exception of a period from 9:10 p. m. to 10:20 p. m. or 10:45 p. m.

There was evidence that two individuals could load two and one-half bunks of cedar shakes in less than twenty minutes, and that it would take about ten minutes to unload them.

Appellant was found guilty of grand larceny after trial by jury.

## ISSUE

The issue presented by this appeal is: Was the evidence sufficient to support the verdict?

## DECISION

The State's evidence in this case was circumstantial. We have held, however, that circumstantial and direct evidence are of equal weight, and that all the elements of a crime may be proved by circumstantial evidence. *State v. Rober,* 86 S.D. 442, 444, 197 N.W.2d 707, 709 (1972).

In reviewing a conviction on appeal, we must accept "that evidence, and the most favorable inferences which can be fairly drawn therefrom, which will support the verdict." *State v. Best,* S.D., 232 N.W.2d 447, 457 (1975). The verdict will not be set aside if the evidence and reasonable inferences, which can fairly be drawn therefrom, sustain a rational theory of guilt, *State v. Dietz,* S.D., 264 N.W.2d 509, 510 (1978).

Defendant claims that the evidence presented is insufficient to prove two elements of grand larceny: (1) That defendant took the property of another; and (2) that he had the specific intent to deprive the owner of his property. We will thus review the evidence tending to prove these ele-

ments in light of the above standards for appellate review.

 The State presented evidence which tended to prove defendant's participation in the crime. He was present when the truck was found at Lage's storage area shortly after 3 a. m. At that time the engine was running, but the lights were off. The truck was backed up to the remaining pallets of cedar shakes. The strapping slat and packaging slip found in the truck matched those remaining at the scene. The wood debris found in defendant's clothes was of the same species and type—Western Red Cedar—as the wood of the cedar shakes. The same type of wood debris was found on the clothes of the other two suspects. A truck of the same description as the one in which defendant was riding was seen going toward and away from the storage area at least twice on the same night. We believe that these circumstances, taken together, support an inference that defendant participated in the crime. Given such evidence, there is a rational theory of guilt to uphold the guilty verdict reached by the jury.

There was also evidence that defendant had the requisite specific intent to deprive Lage of his property. The intent of a defendant in taking another's property may, like other elements of the crime, be proved by circumstantial evidence. *State v. Christiansen,* 46 S.D. 61, 190 N.W. 777 (1922). There is such evidence in this case. Defendant participated in the taking of Lage's property which was accomplished after dark. The truck in question was seen in the area of the crime on several occasions through the night. The lights were turned off and the engine was running when defendant and his companions were discovered near the storage area. All the circumstantial evidence indicates that if defendant took the missing cedar shakes he intended "to deprive [Lage] thereof." SDCL 22–37–1.

Defendant sought to establish an alibi defense through testimony of the bartender and a barmaid in a Rapid City bar. Both testified that defendant was in the bar most of the evening until about 2:30 a. m., July 29. This testimony conflicts with inferences which the jury could reasonably draw from the State's evidence. As the trier of fact, it was for the jury to resolve this conflict in the evidence.

Upon the whole record, we find no error and the judgment is therefore affirmed.

DUNN, C. J., and WOLLMAN and MORGAN, JJ., concur.

ZASTROW, J., deeming himself disqualified, did not participate in the opinion.