**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Craig Alan HANSON, Defendant and Appellant.**

**No. 16729.**

Supreme Court of South Dakota.

Considered on Briefs March 19, 1990.

Decided May 16, 1990.

George H. Danforth, Huron, for defendant and appellant.

Diane Best, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., on brief.

SABERS, Justice.

Craig Alan Hanson appeals his conviction for attempted rape in the first degree.

## Facts

In late April of 1988, a man walked up to the Dairyland counter in the Huron Mall shortly before closing at 9:00 p.m. A sixteen-year-old girl, who was working alone, waited on the man. She asked him if he would like anything. He replied: "You," and began to talk about the girl's body, describing it as good-looking and "hot." Eventually, the girl walked to the back room and the man left.

On May 9 or 10, the man again encountered the girl working alone at Dairyland. As before, he approached the counter shortly before closing, and the girl asked if she could help him. He asked her if she was ready yet and said: "Can't you get the hint yet." She walked to the back and picked up the phone. When she turned around, the man was gone.

The girl worked alone again on the evening of May 12, 1988. After closing about 9:00 p.m., she took the garbage to a dumpster in a well-lighted, enclosed area outside of the mall. She was also carrying a money bag with money, a T-shirt, and some books. When she got to the dumpster, she put the money bag, T-shirt, and books on the ground, lifted the dumpster lid and tossed the garbage inside. Just as she released the garbage, she was grabbed from behind and thrown to the ground by the man. He wrapped his legs around hers and sat on top of her. She began to scream and fight, trying to get the man off her. He kept telling her to shut up, then began grabbing at her shirt and smock. When he started opening the smock, she proceeded to fight even harder. Some buttons were ripped off the smock in the process. After struggling for a minute or two, the man got up and ran out of the dumpster area.

After the man ran off, the girl picked up her things and went home. She told her step-father about the attack, and he called the police. She noticed that she was bruised and had fingernail scrapes down her face.

Approximately one week after the attack, the girl went to the police station to look at some police sketches. How many sketches she looked at is uncertain, but she identified one as her attacker. That sketch had been prepared for another case.

Over the course of the summer, the girl was asked on two or three occasions to come to the police station to look at an individual. On each occasion she determined the person she looked at was not her attacker. In September, she went to the police station to look at a photo lineup. The officer in charge of the investigation, Dave Rand, had prepared a book with eight photos in it. The girl was told to look at the book and was left alone in an interview room. She promptly identified Hanson's picture as that of her assailant. The officer then showed her a full-length picture of Hanson, and she confirmed that he was her assailant.

Hanson was charged with attempted rape in the first degree. At the trial, over defense counsel's objection, the girl identified Hanson as her attacker. The jury found Hanson guilty and he was sentenced to serve twelve and one-half years in the state penitentiary. Hanson raises three issues on appeal. He claims:

1. The trial court erred in failing to suppress the in-court identification,
2. The crime of attempted rape in the first degree was not, as a matter of law, committed, and
3. The evidence presented at trial was insufficient to support the conviction.

### 1. Suppression of the in-court identification.

Hanson claims the trial court should have refused to allow the girl's in-court identification of him as her assailant. He argues the identification procedure was conducted in such an improper manner that the identification is unreliable. The argument is based upon several claimed improprieties in the investigation process, including the showing of sketches and several one-person showups without a record of

these activities. However, Hanson's main claim is that in June of 1988 the girl observed him at the police station and said he was not her attacker, making her later identification of him unreliable.

At the hearing to consider the motion to suppress the in-court identification, Hanson offered testimony that on the morning of June 13, 1988, two law enforcement officers went to his house and asked him to come down to the police station. Hanson says he went to the station and answered questions regarding this case. He claimed the officer conducting the investigation asked him if he would mind if someone came down to look at him. Hanson said he would not mind, so the officer had the girl come to the police station. When the girl arrived, Hanson says she looked at him and told the officer he was not her attacker.

In contrast, the State offered testimony that Hanson was never called to the police station for questioning. Rand testified that he never interviewed Hanson, and the reason he went to Hanson's house was to look for Hanson's brother, whose car had been identified in another case. The officer accompanying Rand likewise testified that the reason they went to Hanson's house was to check on a suspect vehicle in a rape case and Hanson's brother was the owner of that vehicle. Rand claims that Hanson's brother came to the police station later and was questioned by someone. In addition, the girl testified that she was called to the station to look at a man *and a car,* and she identified a picture of Hanson's brother as the person she saw when she was called to the police station for that purpose.

■ The evidentiary rulings of a circuit court will be disturbed only if the court abused its discretion. *State v. Bartlett,* 411 N.W.2d 411 (S.D.1987); *accord State v. Wedemann,* 339 N.W.2d 112 (S.D.1983). In-court identifications will be suppressed when they stem from a procedure "that is so impermissibly suggestive as to result in a very substantial likelihood of irreparable misidentification." *State v. Iron Thunder,* 272 N.W.2d 299, 301 (S.D.1978); *accord State v. Jaeb,* 442 N.W.2d 463 (S.D.1989);

*Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The party seeking to suppress the in-court identification bears the burden of establishing the impermissible suggestiveness of the identification procedure. *Id.* The suggestiveness of the procedure is evaluated by examining the totality of the circumstances surrounding the identification procedure. *Jaeb, supra.* Under the totality of the circumstances, if there is not a very substantial likelihood of irreparable misidentification, then the reliability of an in-court identification is for the jury to weigh. As the United States Supreme Court explained in *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140, 155 (1977):

> We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

■ Hanson has not met his burden of establishing the impermissible suggestiveness of the identification procedure. Although there are questions about the identification procedure, they do not rise to the level of *a very substantial likelihood of irreparable misidentification.* If the testimony of the State's witnesses is believed, then it is unlikely any particular identification was suggested. Furthermore, the girl got a good look at her attacker on three separate occasions, making it unlikely that she would be confused about the identity of the attacker. Consequently, the court did not abuse its discretion in allowing the jury to determine the reliability of the identification.

### 2. *Whether the crime of attempted rape was committed.*

Hanson claims the crime of attempted rape in the first degree could not be committed under the facts of this case as a matter of law. SDCL 22–4–1 provides in part that:

Any person who attempts to commit a crime and in the attempt does any act toward the commission of the crime, but fails or is prevented or intercepted in the perpetration thereof, is punishable[.]

In other words, the statute makes criminal any unequivocal act toward the commission of a crime that would result in the accomplishment of the crime unless frustrated by intervening circumstances. *State v. Martinez,* 88 S.D. 369, 220 N.W.2d 530 (1974).

Hanson claims the facts of this case show neither an unequivocal act nor an intervening force preventing the commission of the crime. He claims one of the parties would have to have clothes removed before conduct could be deemed an unequivocal attempt to rape. Such a require-ment would construe the statute too narrowly. An unequivocal act is an act that "no longer strike[s] the jury as being equivocal but unequivocally demonstrate[s] that a crime is about to be committed." *Id.,* 88 S.D. at 372, 220 N.W.2d at 531. In this case, the jury was justified in concluding that the act of grabbing the girl, throwing her to the ground, and pawing at her clothes demonstrated that the crime of rape was about to be committed.

Hanson also argues that the abandonment of the crime was not caused by intervening circumstances required by the statute. He claims the intervening cir-cumstances that frustrate an attempted crime must be more than the usual resistance expected from someone being attacked. Hanson again construes the statute too narrowly. As we explained in *State v. Judge,* 81 S.D. 128, 131 N.W.2d 573 (1964), the intervening circumstance frustrating the commission of the crime need only be independent of the will of a defendant. Indeed, the statute provides that it is sufficient if the attempt simply "fails." Therefore, the resistance of a victim is sufficient to constitute an intervening circumstance frustrating the commission of a crime.

3. *Sufficiency of the evidence.*

Hanson contends the evidence submitted at trial was insufficient to sup-

port his conviction. We disagree. In determining the sufficiency of the evidence on appeal, our review is limited to determining whether there is evidence in the record which, if believed by the fact finder, will sustain a finding of guilt beyond a reasonable doubt. *State v. LaCroix,* 423 N.W.2d 169 (S.D.1988); *see also State v. Ashker,* 412 N.W.2d 97 (S.D.1987). We must accept the most favorable inferences that can be drawn from the evidence in support of a verdict. *State v. Miskimins,* 435 N.W.2d 217 (S.D.1989). Furthermore, in determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court "to resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence." *State v. Faehnrich,* 359 N.W.2d 895, 900 (S.D. 1984).

Hanson does not argue that there is *insufficient* evidence in the record to sustain the finding of guilt beyond a reasonable doubt, but instead argues that there is evidence in the record that supports his innocence. In other words, Hanson is asking this court to accept his evidence rather than the evidence presented by the State. To do so we would have to resolve conflicts in the evidence, pass on the credibility of witnesses, and weigh the evidence. That is the function of the jury, not this court. We must accept the jury's treatment of the evidence, and may only look to determine whether there is evidence in the record to support their conclusion. Since the testimony of the girl, if believed by the jury, supports the conviction, it must be upheld.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (concurring specially).

Hanson's claim that attempted rape was not committed falls on deaf ears, at this judicial window. A stranger, he accosted her in the store where she worked with suggestive language. Later, he grabbed her outside of the store and threw her to

the ground. He entwined his legs around her and sat on her pelvic area. He ripped at her shirt and the smock supplied by her employer, trying to open them. His vocal overtures to have sex with him, accompanied by his force, creates an attempt to commit a crime under the definition of SDCL 22–4–1. Said statute, when tied in with the definition of rape under SDCL 22–22–1(1) establishes, in law, an "act." It was for the jury to decide if his act was of such nature to be an "equivocal act" to ensure that the intended result was a crime and not any other innocent act. *State v. Martinez*, 88 S.D. 369, 220 N.W.2d 530, 531 (1974). An act is supposed to unequivocally demonstrate that a crime is about to be committed. *Martinez id.*, 220 N.W.2d at 531. Very recently, this Court applied the *Martinez* analysis in a sexual assault appeal. *State v. Haase*, 446 N.W.2d 62 (S.D. 1989). Surely, had this young lady not fought like a cougar, she would have been raped.