STATE of South Dakota, Plaintiff
and Appellee,

v.

Michael Levi ABDO, Defendant
and Appellant.

No. 18157.

Supreme Court of South Dakota.

Considered on Briefs Sept. 3, 1993.

Reassigned April 29, 1994.

Decided June 8, 1994.

Mark Barnett, Atty. Gen., Charles D. McGuigan, Asst. Atty. Gen., Kristine J. Rausch, Legal Intern, Pierre, for plaintiff and appellee.

Joseph Reed, Sioux Falls, for defendant and appellant.

PER CURIAM.

Michael Levi Abdo appeals his convictions for driving under the influence (DUI) and false impersonation with intent to deceive a law enforcement officer (false impersonation). We affirm.

### FACTS

On January 25, 1989, Sioux Falls police officer Terry Persing stopped a vehicle because of loud exhaust. The vehicle was occupied by four individuals including the driver. Officer Persing later testified that all of the car's occupants, except the driver, "walked away down the alley in the other direction."

 State contends that "[o]nce the vehicle was stopped, the driver identified himself as Joseph Nave Abdo, III. JT 10, 52–53; SR 1." This is a misstatement of the evidence. *Officer Persing never testified that the driver identified himself as Joseph Abdo.* In its brief, State cites to three places in the record it claims support its contention. The first record cite is to page 10 of the jury trial transcript where the *prosecuting attorney* stated, outside the presence of the jury, that the driver identified himself as Joseph Abdo. Generally, statements by attorneys do not constitute evidence in the case. VI Wigmore, On Evidence § 1806 (Supp.1991). *See also*, South Dakota Criminal Pattern Jury Instruction 1–17–1. The second record cite is to pages 52 and 53 of the jury trial transcript. On those pages, Officer Persing testified that Joan Roan Eagle let the driver into her house after the driver purportedly stated, "It's me, Joe." Again, this is not evidence to support the contention that, when stopped, the driver of the automobile identified himself as Joseph Nave Abdo, III. The third record cite is to page one of the settled record, the grand jury indictment. Again, it is fundamental that an indictment does not constitute evidence of the commission of a crime. *See generally*, South Dakota Criminal Pattern Jury Instruction 1–3–1. Contrary to the State's contention in its brief, Officer Persing never testified that the driver identified himself as Joseph Nave Abdo, III.

Officer Persing testified that he approached the driver and asked for identification but the driver was unable to provide any identification. Officer Persing noticed alcohol on the driver's breath and asked him to perform several field sobriety tests. After

these tests Officer Persing concluded the driver was under the influence, placed him under arrest, and read him the implied consent law. The driver refused to take the blood-alcohol test. After being advised of his *Miranda* rights, the driver admitted that he had been drinking.

The driver told Officer Persing that his birthdate was 10/20/1970 and that he was seventeen. Officer Persing did not make any calculations to determine that if someone was born in 1970 they would not be seventeen in 1989. Officer Persing treated the driver as a juvenile. Officer Persing testified the policy at that time, concerning juveniles, was to attempt to find a parent or other responsible adult to take care of the juvenile.

The driver gave Officer Persing his parents' names and telephone numbers. Officer Persing called the numbers but could not get any answer. Officer Persing did not testify at trial concerning what names and numbers the driver gave for his parents.

Next, the driver gave Officer Persing the name and number of his aunt, Joan Roan Eagle. Officer Persing took the driver to Joan Roan Eagle's home. The following is a verbatim transcript of Officer Persing's testimony concerning the conversation and events at this home.

Prosecutor: What happened when you got there?

Persing: We went up and knocked on the door. It took a while, but we finally got Miss Roan Eagle to come to the door.

Prosecutor: What happened when she came to the door?

Persing: At first she wouldn't open it. Then the defendant said that it's me, Joe, at which time she opened the door. He says, can I stay here tonight.

Officer Persing filed an arrest report on Joseph Nave Abdo, III. He described the individual as five foot nine, approximately 160 pounds, Native American, black hair, and brown eyes. There is no direct evidence in the record about where Officer Persing came up with the name Joseph Nave Abdo, III. No one showed up at the court appearance date and so a warrant was issued for Joseph Abdo. Joseph Abdo was arrested and three photos of him were shown to Officer Persing in March of 1989. Officer Persing said that the man in the pictures was not the individual he arrested in January of 1989. Officer Persing then filed a report in which he said that he could not positively remember what the driver looked like.

John Mataya, another Sioux Falls Police officer, was assigned to investigate the incident. Officer Mataya obtained a single photograph of Michael Abdo and showed it to Officer Persing, together with the three photos of Joseph·Abdo he previously viewed. Officer Persing identified Michael Abdo as the individual he arrested on January 25, 1989.

Michael Abdo was indicted for DUI and false impersonation. Michael moved to suppress any identification by Officer Persing because it arose from an impermissibly suggestive photographic lineup. The trial court denied the motion to suppress, as well as Michael's motion for judgment of acquittal on the false impersonation charge. The jury convicted Michael Abdo of DUI and false impersonation. Abdo appeals.

## DECISION

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTION TO SUPPRESS OFFICER PERSING'S IDENTIFICATION OF MICHAEL ABDO.

In-court identifications are not admissible at trial when they stem from a photographic identification lineup procedure that is so impermissibly suggestive as to result in a very substantial likelihood of irreparable misidentification. *State v. Iron Thunder*, 272 N.W.2d 299, 301 (S.D.1978) (citing *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *State v. Barcley*, 88 S.D. 584, 225 N.W.2d 875 (1975) and *State v. Sahlie*, 90 S.D. 682, 245 N.W.2d 476 (1976)).

In *Iron Thunder*, this Court set out a two-prong test for photographic lineups: (1) Was the lineup impermissibly suggestive, and (2) if so, was the subsequent in-court identification tainted? *Iron Thunder*, 272 N.W.2d at 301. The burden of establishing

the impermissible suggestiveness of the photographic lineup is on the party seeking to suppress the evidence. *Id.*

The initial determination whether a photographic lineup was impermissibly suggestive is, largely, a subjective one. *Id.* "However, the one-photo array is inherently suspect, and has been consistently condemned by the courts as impermissibly suggestive." *State v. Esslinger,* 357 N.W.2d 525, 528 (S.D.1984) (citing *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Iron Thunder,* 272 N.W.2d at 301.

Even if a single photo lineup was impermissibly suggestive, an in-court identification may still be admissible if the *State* can show, *by clear and convincing proof,* that the in-court identification had an independent origin. *Iron Thunder,* 272 N.W.2d at 301. *See also, Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

To decide if an identification is reliable, the court should look at the "totality of the circumstances" in light of five factors outlined by the U.S. Supreme Court. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). These factors are:

(1) THE OPPORTUNITY OF THE WITNESS TO VIEW THE CRIMINAL AT THE TIME OF THE CRIME.

Officer Persing had a long time to observe the driver of the car after making the stop. He had the driver perform several sobriety tests and then placed him under arrest.

(2) THE WITNESS' DEGREE OF ATTENTION.

Officer Persing was performing his official duties as a police officer investigating a crime. Sobriety tests by their nature require concentration on the suspect. As a police officer, Officer Persing is trained to observe with faculties perhaps more acute then those of an ordinary lay person.

(3) THE ACCURACY OF THE WITNESS' PRIOR DESCRIPTION OF THE CRIMINAL.

Officer Persing described the suspect as five foot nine, approximately 160 pounds, Native American, black hair, and brown eyes. The record discloses that Michael Abdo is an Native American but does not provide any other information to confirm the accuracy of Officer Persing's description.

It also must be noted that in a written report Officer Persing said he could not really remember what the suspect looked like. This must militate against the certainty of his description.

(4) THE LEVEL OF CERTAINTY DEMONSTRATED BY THE WITNESS AT THE CONFRONTATION.

Officer Persing was presented with four pictures. Officer Persing had already said that the individual pictured in three of those photos was not the man he arrested. Thus, for all practical purposes, he was presented with a one-picture lineup. Without hesitation, Officer Persing identified the photo of Michael Abdo as depicting the man he arrested.

(5) THE LENGTH OF TIME BETWEEN THE CRIME AND THE CONFRONTATION.

Approximately two months elapsed between the arrest and the photo-identification. Approximately three years elapsed between the arrest and the in-court identification.

This Court and the U.S. Supreme Court have acknowledged that the decision about whether a photo-lineup was impermissibly suggestive is subjective. The trial court considered the situation and exercised its discretion to allow the in-court identification. This trial court will not be reversed unless, based on the totality of the circumstances, this Court decides that the trial court abused its discretion. *State v. Hanson,* 456 N.W.2d 135, 138 (S.D.1990) (trial court has discretion on evidentiary matter—including admissibility of in-court identifications). We find no abuse of discretion.

WHETHER THE TRIAL COURT ERRED BY DENYING ABDO'S MOTION FOR ACQUITTAL ON THE CHARGE OF FALSE IMPERSONATION.

■ A motion for acquittal is properly denied if the State has produced evidence which, if believed by the jury, may reasonably support a jury's finding of guilt. *State v. Lykken,* 484 N.W.2d 869, 875 (S.D.1992). When deciding whether to grant a motion for acquittal, the trial court must view the evidence in the light most favorable to the non-movant. *Id.*

■ Michael Abdo argues that there was insufficient evidence submitted to the jury to support a finding that he had impersonated someone else. The most compelling point in his favor is the fact that Officer Persing never testified that the driver had told him he was Joseph Abdo. While the driver may have identified himself as Joseph Nave Abdo, III, Officer Persing did not testify to that crucial fact.

However, there are three matters in evidence that have a tendency to prove that the driver was Michael impersonating someone else. First, the driver gave October 10, 1970, as his birthdate. That is not the birthdate of Joseph Abdo. But, it is the same month and day Michael Abdo was born. If one assumes Michael Abdo was the driver, this evidence shows he lied about his age.

Second, Officer Persing testified that at Joan Roan Eagle's house the driver said to Joan, "it's me, Joe." Joan then let him in the house. If Michael was the driver and said "it's me, Joe" it tends to show he was trying to pass himself off as someone named Joe.

There is a third matter which the jury may have (and apparently did) inferred from the totality of the evidence. Officer Persing testified that he arrested the driver and that he thought the driver was Joseph Abdo, III. As outlined above, Officer Persing never testified that the driver said he was Joseph Abdo. However, a jury could have reasonably inferred that from Officer Persing's testimony. On appeal, we accept the evidence and the most favorable inferences that the jury might have fairly drawn from the evidence to support the verdict. *State v. Haase,* 446 N.W.2d 62, 65–66 (S.D.1989).

There was enough evidence presented by the State to justify submitting the issue to the jury. Even though the evidence was conflicting, the jury obviously believed Michael Abdo was impersonating Joseph Abdo. "It is not the proper function of this court to resolve evidentiary conflicts to determine the credibility of witnesses or weigh the evidence." *State v. Battest,* 295 N.W.2d 739, 742 (S.D.1980). The trial court did not abuse its discretion in denying the motion for acquittal.

Affirmed.

MILLER, C.J., and WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.