1996 SD 67

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**David Keith WHITE, Jr., Defendant and Appellant.**

**No. 19021.**

Supreme Court of South Dakota.

Argued Nov. 30, 1995.

Decided June 5, 1996.

---

**678**

Mark Barnett, Atty. Gen., Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Delmar Walter, Minnehaha County Public Defender's Office, Sioux Falls, for defendant and appellant.

AMUNDSON, Justice.

[¶1] David Keith White, Jr. (White), appeals his conviction of two counts of first-degree murder, two counts of grand theft, one count of first-degree robbery, and one count of second-degree rape. We affirm in part, reverse in part and remand.

## FACTS

[¶2] After work on Saturday, April 23, 1994, White went to the Frontier Bar in downtown Sioux Falls. After being thrown out of the Frontier Bar, White decided to stop at the Sun Down Bar for one more beer. It was at this bar that the paths of White and James Wallenstein (Victim) crossed. Victim and his roommate, Jack Sturgeon (Sturgeon), went to the Sun Down Bar at around 5:30 p.m. on April 23, 1994. As the evening progressed, beer and marijuana continued to be consumed by all of the parties involved. Sturgeon and his girl friend, Kari Volk (Volk), left the bar around 2 a.m. and went to a house party where they remained until 4 a.m. Sturgeon then went with Volk to her home where he remained until 7:30 a.m. Sunday morning.

[¶3] Meanwhile, Victim and White were becoming acquainted at the bar. Victim needed a ride home at closing time. Upon arrival, Victim invited White into his trailer. The two smoked marijuana and White passed out on Victim's bed. White claims he was awakened by Victim sexually attacking him. Because of the attack, White hit Victim and grabbed Victim's throat. White left and checked into the Sunset Motel, although his home was in close proximity.

[¶4] Sturgeon arrived home around 7:30 a.m. Around 2 p.m., Sturgeon opened the Victim's bedroom door and discovered Victim's naked body on the floor covered in blood. According to Sturgeon, Victim's empty wallet was on Victim's bed. Sturgeon knelt down to see if Victim was alive. Realizing Victim was cold and rigor mortis had set in, Sturgeon telephoned 911 for emergency assistance.

[¶5] Law enforcement arrived on the scene and made the determination to treat Victim's death as a homicide. During the course of their investigation, police officers seized several items for evidence, including a rubber dog-toy with blood and hair samples on it, a Harley Davidson bandana, which was later determined to belong to White, and blood samples from all over the room.

[¶ 6] White arrived home around 11 a.m. on Sunday morning. He told his family that he had gotten into a fight with a man at the bar to protect a woman. In addition, he stated the woman rewarded him by staying with him that night in a motel room. White, his stepbrother, and a friend took the pickup entrusted to White for work to run some errands. While in the pickup, White's stepbrother and the friend observed blood stained clothing on the floor. These blood-stains were later analyzed and were found to be consistent with Victim's blood type. Later, White was observed in the garage trying to pry open a bank resembling a Campbell's soup can. Victim owned a similar bank which was never found during the search of the trailer.

[¶ 7] The next morning, Mike Happeney (Happeney) stopped by White's house. While Happeney and White were conversing, Happeney told White about an article in the paper regarding Victim's death. White told Happeney he had to go to work, but he never did show up for work. After leaving a message on his employer's answering machine stating he was ill, White went to a pawn shop and pawned several tools belonging to his employer. Using the money he received for the tools, White fled to Hobart, Indiana, in the pickup owned by his employer.

[¶ 8] White contacted and turned himself in to the Indiana authorities. During questioning, White's original story was that when he awoke Victim was already on the floor naked and bleeding. By the end of the interview, White told the detectives he was sexually attacked by Victim. White said he did not tell the truth in the beginning because he was embarrassed.

[¶ 9] White was indicted on May 5, 1994, and charged with three counts of first-degree murder in violation of SDCL 22–16–4. In addition, White was also charged with second-degree rape, first-degree robbery, and two counts of grand theft. A jury trial commenced on November 8, 1994. On November 21, the jury returned its verdict, finding White guilty of two counts of first-degree murder, one count second-degree rape, one count first-degree robbery, and two counts of grand theft. After a presentence investigation, White was sentenced as follows: (1) life without parole as to premeditated murder (Count I); (2) life without parole as to felony-murder rape (Count III) concurrent with Count I; (3) ten years as to robbery in the first degree (Count IV) concurrent with above; (4) twenty-five years as to rape in the second degree (Count V) concurrent with above; (5) seven years as to grand theft (Count VI) consecutive with above; (6) seven years as to grand theft (Count VII) consecutive to Counts I through V and concurrent with Count VI. From this conviction White appeals, based on these issues:

I. Did the trial court err by not allowing White to introduce evidence of prior bad acts of Sturgeon?

II. Did the trial court abuse its discretion by not admitting evidence of a pornographic video found in Victim's VCR?

III. Whether the cumulative effect of the trial court's rulings denied White a fair trial?

IV. Whether there was sufficient evidence for the jury to convict White of premeditated murder and felony murder?

V. Whether multiple convictions and sentences for a single death are proper?

## ANALYSIS

[¶ 10] **I. Prior bad acts of Sturgeon.**

[¶ 11] An abuse of discretion standard applies when we review a trial court's refusal to admit evidence under SDCL 19–12–5 (prior bad acts).[1] *State v. Krebs,* 504 N.W.2d 580, 589 (S.D.1993); *State v. Werner,* 482 N.W.2d 286, 288 (S.D.1992); *State v. Chapin,* 460 N.W.2d 420, 421 (S.D.1990). An abuse of discretion occurs when discretion is exercised to an end or purpose not justified

---

1. SDCL 19–12–5 states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

by and clearly against reason and evidence. *State v. Woodfork,* 454 N.W.2d 332, 335 (S.D. 1990).

■ [¶ 12] When deciding to admit prior bad acts testimony, the court is to employ a two-step approach:

(1) Whether the intended purpose for offering the other acts evidence is relevant to some material issue in the case, and

(2) Whether the probative value of the evidence is substantially outweighed by its prejudicial effect.

*Werner,* 482 N.W.2d at 288 (citing *State v. Basker,* 468 N.W.2d 413, 415 (S.D.1991); *State v. Dickey,* 459 N.W.2d 445, 449 (S.D. 1990); *State v. Klein,* 444 N.W.2d 16, 18–19 (S.D.1989); *State v. Champagne,* 422 N.W.2d 840, 842 (S.D.1988)). The first inquiry is a factual relevancy of the evidence determination. SDCL 19–12–1 (FedREvid 401). This is performed because bad acts evidence is inadmissible to prove bad character. The second inquiry relates to legal relevancy, "[w]hether the probative value of the proffered evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Werner,* 482 N.W.2d at 288; SDCL 19–12–3 (FedREvid 403).

■ [¶ 13] We will not interfere with the trial court's determination of relevancy and materiality unless an abuse of discretion is clearly demonstrated. *State v. Blalack,* 434 N.W.2d 55, 57 (S.D.1988) (citing *Sabag v. Continental South Dakota,* 374 N.W.2d 349, 354 (S.D.1985); *State v. McNamara,* 325 N.W.2d 288, 291 (S.D.1982)). When evaluating prior bad act evidence, we must find that the prior bad act is similar in character in order for it to be relevant. *State v. Lodermeier,* 481 N.W.2d 614, 625 (S.D.1992); *Klein,* 444 N.W.2d at 19; *State v. Pedde,* 334 N.W.2d 41, 43 (S.D.1983). In other words, the prior act must be "reasonably related to the offending conduct." *Lodermeier,* 481 N.W.2d at 625. The burden is on the proponent to prove the prior bad acts in order for the trial court to grant admission. *Chapin,* 460 N.W.2d at 422.

■ [¶ 14] Prior to trial, White moved to admit evidence of prior bad acts of Sturgeon, who was a witness for the State, involving an incident between Sturgeon and Volk. State filed a motion in limine to stop introduction of this evidence as third-party perpetrator evidence. Specifically, the testimony White elicited is that Volk refused to engage in sexual relations with Sturgeon and afterward Sturgeon started to strangulate Volk. The incident occurred after Sturgeon had been drinking. The trial court agreed with State and found said evidence to be in the nature of third-party perpetrator evidence. During the trial, White renewed his request to admit this evidence under the prior bad act rule. The trial court denied White's request, ruling that the prior bad act was not unique enough so as to have any probative value as to the identity of the individual who killed Victim. White made an offer of proof via SDCL 19–12–5 (FedREvid 404(b)), arguing the other acts evidence should be admitted under the identity and modus operandi exception. SDCL 19–12–5. The trial court ruled the evidence was not relevant.

[¶ 15] What makes this case unique is that the defendant, not the State, was seeking to admit this prior bad acts evidence. White requests that we adopt a new standard for admitting prior bad acts evidence by the defense. This standard should be more liberal according to White. The case White relies upon is *State v. Garfole,* 76 N.J. 445, 388 A.2d 587, 591 (1978), which found prejudice was no longer a factor when it was defendant who offered the evidence. In *Garfole,* there were six alleged similar sexual assaults. All occurred between 9:45 p.m. and 11:00 p.m. *Garfole,* 388 A.2d at 589. All but one occurred within the vicinity of a local junior high school and the other was only a half mile away. *Id.* The defendant in *Garfole* alleged he had an alibi for four of the occasions, however, he had no alibi for the incident on trial. *Id.* The *Garfole* Court held simple relevance should suffice as the standard of admissibility. *Id.* 388 A.2d at 591. Therefore, the *Garfole* Court stated "a lower standard of degree of similarity of offenses may justly be required of a defendant using other-crimes evidence defensively

than is exacted from the State when such evidence is used incriminatorily." *Id.* Additionally, the *Garfole* Court felt that this lower standard was needed to allow the defendant the opportunity to present his defense. *Id.* 388 A.2d at 590.

[¶ 16] White's argument to adopt this standard lacks merit for there are not many similarities between Sturgeon's attack of Volk and the murder of Victim as found in *Garfole.* Also, in *Garfole* there was not as much direct evidence against the defendant as there is presently against White. Since White does not meet even the test of simple relevance, there is no need at this time to decide whether to adopt this rule. In addition, White was allowed great latitude in his cross-examination of Sturgeon. During this cross-examination, Sturgeon admitted he had a "black out" the night of Victim's murder. Also, Sturgeon stated he told a police officer that if he killed Victim it would have occurred during one of his black outs. White was allowed to fully present his defense, unlike the defendant in *Garfole.* Even if the evidence was relevant and probative, Sturgeon's attack on Volk is not so unusual or unique, nor is it so similar to the murder at hand, as to constitute modus operandi evidence. Furthermore, evidence should not be admitted to confuse the jury. *State v. Hage,* 532 N.W.2d 406, 412 (citing *State v. Hanson,* 456 N.W.2d 135, 138 (S.D.1990); *State v. Bawdon,* 386 N.W.2d 484, 486 (S.D.1986)). The trial court followed the established precedent in determining whether this evidence was admissible under the prior bad acts rule. We do not find the trial court's determination constitutes an abuse of discretion.

[¶ 17] **II. Pornographic video.**

[¶ 18] State made a motion in limine to prohibit White from entering evidence of a pornographic video found in Victim's VCR. The title of the videotape was "Anal Summer and Anal Delights." The tape depicts a male engaging in anal intercourse with a woman. White states the relevance of this tape is that Victim's sexual preference can be inferred from this tape, tending to prove White was homosexually attacked. The trial court granted the motion in limine stating, "It's impossible for me to see how those movies are relevant to what occurred on the night in question."

[¶ 19] Questions involving the relevancy of evidence are committed to the sound discretion of the trial court. *State v. Olson,* 408 N.W.2d 748, 752 (S.D.1987); *State v. McNamara,* 325 N.W.2d 288, 291 (S.D.1982); *State v. Robideau,* 262 N.W.2d 52, 55 (S.D. 1978). We begin with a presumption that a trial court's evidentiary rulings are correct. *State v. Oster,* 495 N.W.2d 305, 309 (S.D. 1993). We will only disturb the trial court's decision regarding the admission of evidence if there is a clear abuse of discretion. *State v. Orelup,* 520 N.W.2d 898, 901 (S.D.1994); *State v. Devall,* 489 N.W.2d 371, 374 (S.D. 1992).

[¶ 20] Relevant evidence is evidence which has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Orelup,* 520 N.W.2d at 902; *State v. Phillips,* 489 N.W.2d 613, 617 (S.D.1992); *State v. Brings Plenty,* 459 N.W.2d 390, 398 (S.D.1990). The trial court made a clear record as to why it felt the tape was not relevant to the case:

> I know of no studies or anything else that would say that people who have in their possession at least constructive possession, pornographic movies are more likely to engage in any particular kind of sexual conduct ... Does a kind of movie that a person watches, is that an indication of how that person will behave? I know of no reliable expert opinion that answer that affirmatively ... I mean I'm just not aware of how you're going to lay the foundation to make it relevant ... I suppose in theory some psychologists or psychiatrists could say that people who watch these kinds of movies are likely to behave in this kind of behavior, but I think you need that kind of testimony[.]

Basically, the trial court was stating the mere possession of pornographic or sexually explicit matter does not show a propensity to engage in similar conduct. *See State v. Crum,* 150 Ariz. 244, 722 P.2d 971, 974

(1986); *White v. State,* 137 Tex.Crim. 481, 131 S.W.2d 968, 970 (1939). The causal link between possession of pornographic materials and an individual's propensity to commit sexual offenses is tenuous, if not nonexistent. *See State v. Vanderham,* 78 Or.App. 589, 717 P.2d 647, 648 (1986). The trial court did not abuse its discretion by excluding the videotape from evidence for White made no causal connection between the tape and the murder and rape of Victim.

### [¶ 21] III. Cumulative effect.

[¶ 22] Since we find no error with the trial court's evidentiary rulings, there is no reason to address their cumulative effect.

### [¶ 23] IV. Sufficiency of the evidence.

[¶ 24] A jury's verdict will not be overturned as long as the "evidence and the reasonable inferences drawn therefrom sustain a rational theory of guilt." *State v. Bachman,* 446 N.W.2d 271, 274 (S.D.1989); *see also State v. Abdo,* 518 N.W.2d 223, 227 (S.D.1994); *State v. Gallipo,* 460 N.W.2d 739, 742 (S.D.1990); *State v. McCafferty,* 356 N.W.2d 159, 165 (S.D.1984); *State v. Ree,* 331 N.W.2d 557, 559 (S.D.1983); *State v. Grey Owl,* 316 N.W.2d 801, 804 (S.D.1982); *State v. Herrald,* 269 N.W.2d 776, 778 (S.D.1978); *State v. Boyles,* 260 N.W.2d 642, 643 (S.D. 1977). If State has made a prima facie case from which the jury could reasonably find the defendant guilty, denial of a motion for acquittal will not be disturbed. *State v. Jones,* 521 N.W.2d 662, 672 (S.D.1994); *Bachman,* 446 N.W.2d at 274; *State v. Basker,* 468 N.W.2d 413, 417 (S.D.1991). When considering the sufficiency of the evidence, this court considers the evidence in the light most favorable to the verdict. *Jones,* 521 N.W.2d at 672–73. We do not resolve conflicts in the evidence, pass on the credibility of the witnesses, determine the plausibility of an explanation, or weigh the evidence. *State v. Andrews,* 393 N.W.2d 76, 80 (S.D.1986); *State v. Blakey,* 332 N.W.2d 729, 731 (S.D. 1983).

[¶ 25] At the close of White's case, he made a motion for judgment of acquittal on the homicide counts. This motion was denied. White argues that State did not meet the sufficiency requirement for the premeditated murder and the felony murder rape convictions. The basis for White's contention is his belief that the coroner was unable to determine whether the anal injuries inflicted upon Victim were the result of consensual or nonconsensual acts. However, in our review of the record, it was coroner's opinion that the injuries were from nonconsensual acts. Although the coroner was not absolutely certain, absolute certainty is not required to prove someone guilty beyond a reasonable doubt. *See State v. Larson,* 512 N.W.2d 732, 738 (S.D.1994); South Dakota Pattern Jury Instruction–Criminal 1–6–2. White admits he "kicked [Victim's] ass" yet he now wants to argue that he did not inflict injuries upon Victim. This issue is without merit.

### [¶ 26] V. Multiple convictions and sentences for a single death.

[¶ 27] White was found guilty of both first-degree premeditated murder and first-degree murder during the commission of a felony. SDCL 22–16–4.[2] In addition, the trial court sentenced White to life imprisonment under both convictions. State concedes that the trial court improperly convicted and sentenced White to two punishments for a single crime as explained in *Wilcox v. Leapley,* 488 N.W.2d 654, 657 (S.D.1992). The proper remedy in such a situation is to vacate the sentence and remand for resentencing. *Wilcox,* 488 N.W.2d at 656. In *Wilcox,* we held that double homicide convictions for a single death were improper. "In the future, we urge prosecutors to charge defendants in cases such as this in alternative counts." *Id.* at 657. Unfortunately, this directive was not followed in White's case. The *Wilcox* court held that the proper remedy was not reversal of the conviction but was reversal of the sentence. *Id.* This sentence

---

**2.** SDCL 22–16–4 states: "Homicide is murder in the first degree when perpetrated without authority of law and with a premeditated design to effect the death of the person killed or of any other human being, or when committed by a person engaged in the perpetration of, or attempt to perpetrate, any arson, rape[.]"

must be vacated and remanded for resentencing in accordance with this opinion.

[¶ 28] Under the foregoing analysis, we affirm in part, reverse in part, and remand for resentencing consistent with this opinion.

[¶ 29] MILLER, C.J., and KONENKAMP and GILBERTSON, JJ., concur.

[¶ 30] SABERS, J., concurs in part and dissents in part.

SABERS, Justice (concurring in part and dissenting in part).

[¶ 31] I concur in all respects except that I dissent to Issue V, Multiple convictions and sentences for a single death.

[¶ 32] The majority opinion notes that: "In *Wilcox*, we held that double homicide convictions for a single death were improper. 'In the future, we urge prosecutors to charge defendants in cases such as this in alternative counts.' " (quoting *Wilcox v. Leapley*, 488 N.W.2d 654, 657 (S.D.1992)), and then adds "Unfortunately, this directive was not followed in White's case."

[¶ 33] I have news for the Supreme Court. Our "directive" to prosecutors will not be followed in the next case either, nor the next. The reason is obvious. We have no teeth in the directive. In fact, the Court continues to condone the prosecutor's overreaching by permitting the conviction to remain and requires removal of the sentence *only*. How this court can condone and leave of record an "improper conviction" is beyond my understanding. Obviously, we need to send directives with votes, not just words.

[¶ 34] To make matters worse, the "State concedes that the trial court improperly convicted and sentenced White to two punishments for a single crime as explained in Wilcox...." When the State, through the Attorney General's Office, concedes an improper conviction and sentence, we should require that the trial court vacate both. Otherwise, to quote from our Chief Justice, "it's like punching marshmallows," and accomplishes nothing.

[¶ 35] As I stated in *Wilcox II*, at 661, "I may need more lessons in logic but words like 'disjunctive,' 'either,' and 'alternative' imply one or the other but *not* both," and as further stated therein: "[we should] reverse and remand to the trial court to vacate one of the homicide convictions and [sentence]."